**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| LATOYA NIX, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 25-02515 (RC) |
| | : | | |
| v. | : | Re Document No.: | 11 |
| | : | | |
| HUNG CAO, Acting Secretary<br>Department of the Navy, | : | | |
| | : | | |
| Defendant. | : | | |

# MEMORANDUM OPINION

## DENYING DEFENDANT'S MOTION TO DISMISS

## I. INTRODUCTION

Plaintiff LaToya Nix, an employee of the Department of the Navy, brings this action against the Secretary of the Navy under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.[1] She alleges race discrimination and retaliation. *See generally* Am. Compl., ECF No. 3. The Secretary moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Ms. Nix has not plausibly alleged either claim. *See generally* Def.'s Mot. Dismiss ("Mot. Dismiss"), ECF No. 11. For the reasons explained below, the Court concludes that Ms. Nix has plausibly alleged both claims.

---

[1] Ms. Nix's October 2025 Amended Complaint named John Phelan, then Secretary of the Navy, as the defendant. Am. Compl. at 2. As reflected in Defendant's May 2026 reply in support of the motion to dismiss, Hung Cao is now the Acting Secretary of the Navy. Def.'s Reply at 1, ECF No. 15; *see also Sec'y of the Navy*, U.S. Dep't of the Navy, https://www.secnav.navy.mil/Pages/Bio.aspx [https://perma.cc/BZ2Z-Q5JK] (last visited Sep. 28, 2026).

## II. FACTUAL AND PROCEDURAL BACKGROUND

Ms. Nix, a Black woman, has worked for the Navy International Programs Office ("NIPO") FMS Field Office, Washington, D.C., as a program analyst since March 2021. Am. Compl. ¶¶ 4, 25. When she was hired, her base salary was $103,172, and she received a Washington, D.C., locality adjustment pay of $33,521, for a total adjusted pay of $136,693. *Id.* ¶ 26.

In early 2023, Ms. Nix sought permission from her employer to work remotely from Saint Johns, Florida. *Id.* ¶ 27. NIPO approved that request and, pursuant to Ms. Nix's Remote Work Agreement, changed her official duty location from the Washinton, D.C., area to Florida. *Id.* ¶¶ 27–28. The change in locality reduced Ms. Nix's annual locality pay by $16,498. *Id.* ¶ 28.

The events underlying this suit also involve Amanda Lochridge, a White program analyst at NIPO. *Id.* ¶ 29. Ms. Lochridge joined NIPO in August 2022. *Id.* Consistent with NIPO's practice of matching an incoming employee's salary, NIPO initially set Ms. Lochridge's salary to match what she had earned with her previous employer; that amount included Washington, D.C., locality pay because she was expected to relocate to D.C. from Georgia. *See id.* ¶¶ 30–32. But she did not relocate. *Id.* ¶ 32. In February 2023, NIPO approved Ms. Lochridge's request to work remotely from Georgia and adjusted her locality pay accordingly, reducing her total salary by $8,705. *See id.* ¶¶ 34–35.

Ms. Nix alleges that NIPO thereafter took steps to offset Ms. Lochridge's reduction in locality pay, while providing no comparable adjustment to Ms. Nix or other Black employees who had also experienced locality-pay reductions. *See id.* ¶¶ 36, 45. In March 2023, Executive Director Karla Horn allegedly sought a $3,500 Special Act Award for Ms. Lochridge as part of a plan to offset her lost locality pay; that award was not approved. *Id.* ¶ 39.

On May 9, 2023, a program analyst prepared a Memorandum for the Record (MFR) concerning an audit of Ms. Lochridge's pay setting. *Id.* ¶ 40. The MFR concluded that Ms. Lochridge's pay had been properly set and did not recommend moving forward with a resetting. *Id.* Ms. Nix alleges that John Bennett, Deputy Director of Corporate Operations, reviewed the MFR, agreed that Ms. Lochridge's pay had been properly set, and "further acknowledged that if the agency was going to benefit Ms. Lochridge by increasing her salary, the Agency should similarly treat Black employees in the same manner." *Id.* ¶¶ 7, 41. Ms. Nix alleges that NIPO nevertheless continued its efforts to increase Ms. Lochridge's compensation. Ms. Lochridge received a $1,000 Special Act Award in May 2023. *Id.* ¶ 42. The following month, Ms. Horn, in concert with Mr. Bennett and others, allegedly changed the MFR recommendation so that it concluded that Ms. Lochridge's original pay setting had been erroneous and recommended resetting her pay. *Id.* ¶ 43. In August 2023, Ms. Lochridge's base pay was increased by $7,354, nearly offsetting the reduction in her locality pay. *Id.* ¶ 44.

Ms. Nix alleges that she and other Black employees were not afforded comparable treatment. *Id.* ¶ 45. She also alleges that NIPO Team Lead Ray Bruckner "noted that if Ms. Lochridge was Black[,] she would not have received such preferential treatment." *Id.*

According to Ms. Nix, she and Ms. Lochridge were similarly situated in several respects: both were program analysts assigned to NIPO's FMS Field Office; both had the same pay plan, series, and grade; both performed work pursuant to FMS billets; both had Remote Work Agreements; and both were under the second-line supervision of Ms. Horn. *Id.* ¶¶ 6, 38.

Ms. Nix contacted NIPO's Equal Employment Opportunity (EEO) Office in September 2023 and complained of racial discrimination concerning the alleged disparate compensation treatment. *Id.* ¶¶ 9–10. On October 10, 2023, the EEO Office notified Mr. Bennett, Ms. Nix's

first-line supervisor, that Nix had identified him as a responsible management official in her EEO complaint. *Id.* ¶¶ 7, 46.

From November 2023 to December 2023, Mr. Bennett and other members of NIPO's "pay pool" deliberated over Ms. Nix's performance appraisal.[2] *Id.* ¶ 47. Performance scores for the 2023 fiscal year were released on January 19, 2024. *Id.* ¶ 48. Mr. Bennett gave Ms. Nix a +1 performance rating. *Id.* Ms. Nix alleges that she received a +2 rating for fiscal year 2022. *Id.* ¶ 50. At Ms. Nix's performance review on January 23, 2024, she asked Mr. Bennett why she had not received a +2 rating. *Id.* ¶ 49. Mr. Bennett indicated that Ms. Nix had performed exceptionally, but he allegedly refused to change the numerical rating and told Ms. Nix that he felt she had "stabbed him in the back." *Id.* Ms. Nix alleges that Mr. Bennett's comment was in reference to her decision to name him as a responsible management official in her EEO complaint, and that he gave her the lower performance rating in retaliation for doing so. *Id.* ¶ 50.

Ms. Nix alleges a second retaliatory episode involving Julie Darden, Director of Corporate Operations and Ms. Nix's first-level supervisor. *Id.* ¶ 8. In March or April 2024, Ms. Darden allegedly complained that collecting information for the EEO investigations involving Ms. Nix and another employee was consuming a significant portion of her time. *Id.* ¶ 51. On July 18, 2024, Ms. Darden allegedly failed to invite Ms. Nix to a training, which Ms. Nix describes as a "professional development opportunity." *Id.* ¶ 52. Ms. Nix alleges that all of her "coworkers within IPO410 were invited to participate in the professional development opportunity," except for the two employees who had engaged in protected EEO activity.[3] *Id.*

---

[2] Ms. Nix's amended complaint does not explain the meaning of "pay pool." *See* Am. Compl.

[3] Ms. Nix's amended complaint does not explain the meaning of "IPO410." *See* Am. Compl.

Ms. Nix amended her EEO complaint to include the alleged retaliation by Mr. Bennett and Ms. Darden. *See id.* ¶¶ 14–18. The Navy's EEO Office eventually accepted three issues for investigation: (1) whether NIPO discriminated against Ms. Nix based on race by increasing Ms. Lochridge's base salary to offset her locality-pay reduction while denying comparable treatment to Black employees; (2) whether Mr. Bennett retaliated against Ms. Nix in connection with her January 2024 performance rating; and (3) whether Ms. Darden retaliated against Ms. Nix by excluding her from the July 2024 professional development opportunity. *Id.* ¶¶ 15, 17–19. After the Navy investigated Ms. Nix's allegations, it issued a Report of Investigation, and Ms. Nix elected to proceed with a hearing before the Equal Employment Opportunity Commission (EEOC) on December 17, 2024. *Id.* ¶¶ 19–20. More than 180 days after filing her administrative complaint, Ms. Nix filed this action in district court and sought withdrawal of the EEOC proceedings. *Id.* ¶¶ 21–22.

Ms. Nix's operative amended complaint asserts two claims under Title VII: race discrimination and retaliation. *Id.* ¶¶ 54–65. The Secretary moved to dismiss both claims under Federal Rule of Civil Procedure 12(b)(6). *See generally* Mot. Dismiss.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows defendants to move to dismiss for failure to state a claim upon which relief can be granted. To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When evaluating a Rule 12(b)(6) motion, the court "must accept well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor." *Modeste v. Tesla, Inc.*, No. 26-CV-2177 (CRC), 2026 WL 2415733, at *1 (D.D.C. Aug. 18, 2026) (citing *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 150 (D.C. Cir. 2015)). The court, however, need not accept legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

In determining whether a complaint plausibly states a claim, the court may consider only "the facts contained within the four corners of the complaint," *Nat'l Postal Pro. Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 28 (D.D.C. 2006), along with "any documents attached to or incorporated into the complaint, matters of which the court may take judicial notice, and matters of public record," *United States ex rel. Head v. Kane Co*., 798 F. Supp. 2d 186, 193 (D.D.C. 2011).

## IV. ANALYSIS

The Secretary moves to dismiss Ms. Nix's claims. The Court concludes that both the race discrimination and retaliation claims survive.

### A. Race Discrimination

Title VII mandates that "[a]ll personnel actions affecting employees . . . in military departments . . . [and] in executive agencies . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). To state a Title VII discrimination claim, a plaintiff must plausibly allege that she (1) "suffered an adverse

employment action" and that (2) the action occurred "because of" the plaintiff's protected characteristic. *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).

Whether the challenged action occurred "because of" the plaintiff's protected characteristic may be established through either direct or circumstantial evidence. *See DeJesus v. WP Co. LLC*, 841 F.3d 527, 532 (D.C. Cir. 2016). Direct evidence is evidence that itself reveals discriminatory intent, such as "a statement that itself shows . . . bias" that was made by the official responsible for the challenged decision. *Wilson v. Cox*, 753 F.3d 244, 247 (D.C. Cir. 2014). Where direct evidence is absent, discriminatory intent may be inferred from circumstantial evidence, including, for example, more favorable treatment of similarly situated employees outside the plaintiff's protected class. *See Bradshaw v. Vilsack*, 560 F. Supp. 3d 101, 134 (D.D.C. 2021). Ms. Nix relies on circumstantial evidence here.[4]

Courts assess circumstantial evidence under the framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 376 (D.D.C. 2018). Under that framework, the plaintiff bears the burden of establishing a prima face case of discrimination by showing that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007) (citation omitted). "[I]f the plaintiff succeeds in proving the prima facie case, the burden

[4] To be sure, the Amended Complaint does allege a race-related statement by Mr. Bennett, who allegedly participated in the process that culminated in Ms. Lochridge's salary increase. Am. Compl. ¶¶ 41, 43–44. Specifically, Mr. Bennett "acknowledged that if the Agency was going to benefit Ms. Lochridge by increasing her salary, the Agency should similarly treat Black employees in the same manner." *Id.* ¶ 41. But that statement does not itself express discriminatory animus or identify race as the reason Ms. Lochridge received the benefit. It may nonetheless bear on the inference of discrimination when considered as circumstantial evidence alongside the allegedly more favorable treatment afforded to Ms. Lochridge and the circumstances surrounding the decision to increase her compensation.

shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the action in question." *Id*. (cleaned up). "[S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove . . . that the legitimate reasons offered by the defendant . . . were a pretext for discrimination." *Id.*

At the motion to dismiss stage, however, "a plaintiff need not plead facts supporting every element of a prima facie case or anticipate the nondiscriminatory reasons that her employer may proffer." *Bastian v. Nat'l Multiple Sclerosis Soc'y*, No. 24-CV-02757 (DLF), 2026 WL866176, at *4 (D.D.C. Mar. 30, 2026) (citing *Swierkiewicz v. Sorema N.A*., 534 U.S. 506, 510–14 (2002)). Instead, she "must plead facts sufficient to allow a plausible inference that the challenged action was because of h[er] race." *Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 530 (D.C. Cir. 2025). The Court therefore considers Ms. Nix's allegations together in determining whether they plausibly support such an inference.

There is no dispute that Ms. Nix, who is Black, belongs to a protected class. The parties dispute whether she suffered an adverse employment action and whether the unfavorable action gives rise to an inference of race discrimination. *See Wiley*, 511 F.3d at 155. The Court concludes that Ms. Nix has plausibly alleged both and therefore denies the Secretary's motion to dismiss her race discrimination claim.

1. Adverse Employment Action

In *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), the Supreme Court clarified the standard for an actionable adverse employment action. A plaintiff need only allege "some harm respecting an identifiable term or condition of employment"; that harm need not be "significant," "serious, or substantial." *Id.* at 354–55. Ms. Nix's allegations clear that bar.

Ms. Nix alleges that after both she and Ms. Lochridge experienced reductions in locality pay, the Navy later increased Ms. Lochridge's base salary while Ms. Nix and other Black employees were not "afforded the same treatment." Am. Compl. ¶¶ 28, 35, 42, 44–45. That alleged disparity concerns compensation. As the D.C. Circuit has explained, a pay raise has "direct, measurable, and immediate effect" on an employee, and "the loss of a . . . raise likewise has such an effect." *Douglas v. Donovan*, 559 F.3d 549, 553 (D.C. Cir. 2009) (citation omitted). Thus, the alleged failure to afford Ms. Nix comparable compensation treatment constitutes the "some harm" *Muldrow* requires. 601 U.S. at 354–355. Indeed, addressing materially similar allegations concerning the Navy's treatment of Ms. Lochridge, another court in this District recently concluded that "[l]osing out on more favorable pay qualifies as an adverse action." *Williams v. Cao*, No. 1:25-CV-3532 (TNM), 2026 WL 2924446, at *3 (D.D.C. Sept. 29, 2026).

The Secretary argues that Ms. Nix suffered no harm because the adjustment to Ms. Lochridge's salary did not alter any term or condition of Ms. Nix's employment. Mot. Dismiss at 11–12. But that mischaracterizes Ms. Nix's theory. She does not claim that Ms. Lochridge's raise itself reduced Ms. Nix's compensation. Rather, she alleges that, after both employees experienced locality pay reductions, the Navy nearly offset Ms. Lochridge's reduction through a raise while affording Ms. Nix and other Black employees no comparable treatment.

The Secretary also argues that "[o]n its face, the Complaint demonstrates that the agency remediated an error to Lochridge's salary pay-setting." *Id.* at 11. But the Amended Complaint alleges that the Navy reached that conclusion only after reversing its earlier determination. A May 2023 memorandum found no error in Ms. Lochridge's original pay setting and did not recommend resetting her pay, and Mr. Bennett agreed with that conclusion. Am. Compl. ¶¶ 40–41. The Navy then allegedly changed the memorandum's recommendation and increased Ms.

Lochridge's salary. *Id.* ¶¶ 43–44. At this stage, the Court need not credit the Secretary's competing explanation over Ms. Nix's well-pleaded allegations. *See Williams*, 2026 WL 2924446, at *3; *Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006) (explaining that a plaintiff is not required "to allege facts sufficient to negate the [defendant's] alternative explanations for its actions").

Accordingly, Ms. Nix has plausibly alleged an adverse employment action.

2. <u>Inference of Discrimination</u>

The Court next considers whether Ms. Nix has plausibly alleged that the challenged treatment occurred because of her race. She relies on circumstantial evidence, so the Court asks whether the circumstances alleged permit a reasonable inference of discrimination. *See Wiley*, 511 F.3d at 155. Because that inquiry is contextual, the Court considers the allegations collectively rather than in isolation. *See Townsend v. United States*, 236 F. Supp. 3d 280, 298 (D.D.C. 2017). Viewed as a whole, the allegations plausibly support an inference of race discrimination.

Ms. Nix alleges that the Navy treated Ms. Lochridge, a White employee, more favorably under circumstances that permit a meaningful comparison. One way for a plaintiff to establish a reasonable inference of discrimination is to "demonstrate dissimilar treatment of a similarly situated comparator without the protected characteristic." *Johnson v. Georgetown Univ.*, 827 F. Supp. 3d 133, 161 (D.D.C. 2026) (cleaned up). At the pleading stage, the comparator need not be nearly identical to the plaintiff. Rather, the complaint must allege sufficient facts to show that the comparator was "in fact 'similarly situated' in some meaningful respect" and "include[] enough detail to plausibly infer that discrimination caused the defendant's differential treatment

of the plaintiff." *Joyner*, 140 F.4th at 530–31. That inquiry "cannot be reduced to a mechanical formula; it is sensitive to the specific context of [the] case." *Id.* at 530.

Ms. Nix alleges that she and Ms. Lochridge were both program analysts assigned to NIPO's FMS Field Office; shared the same pay plan, series and grade; performed work pursuant to FMS billets; worked under Remote Work Agreements; and were subject to Ms. Horn's second-line supervision. Am. Compl. ¶ 38. She further alleges that both experienced pay reductions as a result of their locality, but that Ms. Lochridge later received an increase in base pay while Ms. Nix and other Black employees who experienced similar reductions were not "afforded the same treatment." *Id.* ¶¶ 28, 35–36, 42, 44–45. Those allegations supply the details that *Joyner* requires. 140 F.4th at 530–31. They plausibly show that Ms. Lochridge and Ms. Nix were similarly situated in respects relevant to the compensation treatment at issue, making the more favorable treatment of Ms. Lochridge's a meaningful basis from which discriminatory intent may be inferred.

The circumstances surrounding Ms. Lochridge's salary increase reinforce that inference. The Amended Complaint alleges that a May 2023 audit found no error in Ms. Lochridge's pay setting and did not recommend resetting her pay. Am. Compl. ¶ 40. Mr. Bennett allegedly agreed with that conclusion and "acknowledged that if the Agency was going to benefit Ms. Lochridge by increasing her salary, the Agency should similarly treat Black employees in the same manner." *Id.* ¶ 41. Ms. Horn and others nonetheless changed the memorandum so that it reached the opposite conclusion, after which Ms. Lochridge's pay was increased. *Id.* ¶¶ 43–44. And Team Lead Ray Bruckner allegedly "noted that if Ms. Lochridge was Black she would not have received such preferential treatment." *Id.* ¶ 45. Taken together, the alleged sequence of

events and statements place the differential treatment in a racial context and support a plausible inference of discriminatory intent.

The Secretary's arguments do not compel a different conclusion. He asserts that Ms. Nix and Ms. Lochridge are not appropriate comparators because Ms. Lochridge entered NIPO as a new hire under the Navy's "standard practice" of matching an incoming employee's prior salary, and her later increase merely preserved that arrangement. Mot. Dismiss at 9–10. But that argument does not establish at the pleading stage that Ms. Nix and Ms. Lochridge were governed by different compensation policies when the challenged treatment occurred. The Amended Complaint describes salary matching as the practice used to set Ms. Lochridge's pay when she was hired in August 2022; it does not allege that the practice governed the later adjustments that occurred in May and August 2023. Am. Compl. ¶¶ 42, 44. Whether those adjustments were an application of the salary matching policy is better understood as the Secretary's asserted nondiscriminatory explanation for the differential treatment, not as a defect apparent on the face of Ms. Nix's comparator allegations.[5]

Nor does that explanation otherwise defeat the plausibility of Ms. Nix's claim. *Joyner* recognizes that an "obvious alternative explanation" may foreclose an inference of

[5] The Secretary also argues that Ms. Nix "does not allege any details regarding Ms. Lochridge's performance, experience, qualifications, or how those compared to her own," and that Ms. Nix and Ms. Lochridge are not "similarly positioned in at least some relevant respects" because they were assigned to different units, had different supervisors, had different job titles, and engaged in different conduct with regards to remote work. Def.'s Reply at 2–3 (quoting *Joyner*, 140 F.4th at 531). The Secretary did not make these arguments in his motion to dismiss, so he has forfeited them. *See Fox v. Gov't of D.C.*, 794 F.3d 25, 29 (D.C. Cir. 2015) (reiterating that arguments first raised in reply briefs are generally forfeited). Regardless, as previously discussed, at the motion to dismiss stage, the alleged comparator need not be nearly identical to plaintiff in all respects, she need only be "similarly situated in some meaningful respect." *Joyner*, 140 F.4th at 531. Ms. Nix's allegations of Ms. Lochridge's similarity to her clear that bar.

discrimination where the plaintiff's own allegations supply that explanation and "offer nothing to rebut" it. 140 F.4th at 534. Here, however, the Amended Complaint alleges facts that call the Secretary's explanation into question. As discussed earlier, the Navy initially concluded that Ms. Lochridge's pay had been properly set, only to reverse course before increasing her compensation. *See* Am. Compl. ¶¶ 40–44. And an employer's divergence from its own policies can raise an inference of pretext. *See Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1115 (D.C. Cir. 2016).

Accordingly, viewed collectively, Ms. Nix's allegations plausibly support an inference that the difference in compensation treatment was because of race. The Court therefore denies the Secretary's motion to dismiss Ms. Nix's race discrimination claim.

**B. Retaliation**

The Court next considers Ms. Nix's retaliation claim. Title VII protects federal employees from retaliation by their employer by making it unlawful to discriminate against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a); *Rochon v. Gonzales*, 438 F.3d 1211, 1216 (D.C. Cir. 2006) (concluding that Section 2000e-3(a) applies to federal employment actions through the language of 42 U.S.C. § 2000e-16). "To plead unlawful retaliation, a plaintiff must allege sufficient facts from which it can be reasonably inferred (1) [that] he engaged in protected activity opposing discrimination; (2) that he suffered a materially adverse employment action by his employer; and (3) that there was a causal link between the protected activity and the adverse action." *Massaquoi v. District of Columbia*, 81 F. Supp. 3d 44, 50 (D.D.C. 2015) (cleaned up). An action is materially adverse in this context if it

"well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

Ms. Nix alleges that the Navy retaliated against her for engaging in EEO activity in two ways: first, by giving her a +1 performance score for FY23 after she named Mr. Bennett as a responsible management official in her EEO complaint; and second, by excluding her from a July 2024 professional development opportunity. Am. Compl. ¶¶ 49, 52.

There is no dispute that Ms. Nix engaged in protected activity. The Secretary argues that neither alleged retaliatory act was materially adverse and, with respect to the professional development opportunity, also disputes causation. As explained below, the Court concludes that Ms. Nix's exclusion from the professional development opportunity and her FY23 performance rating support a retaliation claim.

1. Performance Review

The Court disagrees with the Secretary's argument that Ms. Nix's FY23 performance review was not materially adverse.[6]

A negative performance evaluation may constitute a materially adverse action "only when attached to financial harms," including consequences for an employee's "position, grade level, salary, or promotion opportunities." *Baloch*, 550 F.3d at 1199. At the pleading stage, however, a plaintiff need not show that a particular financial loss was certain so long as the allegations plausibly indicate that such consequences could follow. *See Bell v. Fudge*, No. 20-CV-2209 (CRC), 2022 WL 4534603, at *8 (D.D.C. Sept. 28, 2022); *Bain v. Off. of Att'y Gen.*, 648 F. Supp. 3d 19, 57 (D.D.C. 2022).

[6] Because the Secretary challenges this theory only on that basis, the Court need not consider causation.

Ms. Nix has plausibly alleged as much here. She alleges that Mr. Bennett and other "pay pool members" engaged in "Pay Pool deliberations regarding performance appraisals" for her, and that Mr. Bennett thereafter gave her a +1 score rather than the +2 she had received the previous year. Am. Compl. ¶¶ 47–50. She further alleges that when she asked why she had not received a +2, Mr. Bennett agreed that her performance had been exceptional but said that he felt she had "stabbed him in the back" and refused to change the rating. *Id.* ¶ 49. Although the Amended Complaint does not define "Pay Pool," the allegation that her appraisal was considered in that process permits the reasonable inference, at this stage, that the rating had potential consequences for compensation.

The Secretary does not dispute that performance evaluations are tied to compensation. Rather, he argues that the +1 rating was not materially adverse because it was itself a positive evaluation and did not affect Ms. Nix's compensation. Mot. Dismiss at 14. In support, the Secretary points to materials from the administrative record. *Id.* At the pleading stage, however, Ms. Nix need not establish that a particular financial loss was certain; it is enough that the allegations plausibly suggest that financial consequences could follow from the challenged rating. *See Bell*, 2022 WL 4534603, at *8. Whether the +1 rating in fact affected Ms. Nix's compensation is a factual question that is better addressed on a developed record at summary judgment. *See Markowicz v. Johnson*, 206 F. Supp. 3d 158, 171 (D.D.C. 2016).

Accordingly, the Court denies dismissal of this retaliation theory.

2. <u>Professional Development Opportunity</u>

The Court concludes that Ms. Nix has plausibly alleged material adversity and causation as to the July 2024 professional development opportunity.

*a. Material Adversity*

Exclusion from a professional development opportunity may be materially adverse when the opportunity carries professional consequences. *See Burlington*, 548 U.S. at 69. Whether it does so depends on context, *id.*, and "under certain circumstances, an action may be materially adverse even if no tangible harm results," *see Doe 1 v. George Washington Univ.*, 369 F. Supp. 3d 49, 73 (D.D.C. 2019). Here, the Amended Complaint describes the July 2024 event as a "professional development opportunity" and a "training," and alleges that every worker in IPO410 was invited except for Ms. Nix and another employee who had engaged in EEO activity. Am. Compl. ¶ 52. Those allegations permit a reasonable inference that the training was part of the professional development made available to employees in Ms. Nix's unit and carried some employment-related professional benefit. Although Ms. Nix does not identify a particular tangible consequence from her exclusion, viewed in the light most favorable to her, *see Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 278 (D.D.C. 2017), exclusion under the circumstances alleged could plausibly dissuade a reasonable employee from engaging in protected activity.

The Secretary argues that Ms. Nix has not provided details about the nature of the training and how her exclusion affected her professional development. *See* Mot. Dismiss at 13. But that argument asks too much at the pleading stage. *See Williams*, 2026 WL 2924446, at *4. And the cases on which he relies do not establish that a plaintiff must always plead a tangible professional consequence whenever the challenged action involves a training.

The Secretary also relies on documents from the administrative record to argue that the training was available remotely and that Ms. Nix could not have attended in person. Mot. Dismiss at 13–14; Def.'s Reply at 5. Those assertions do not provide a basis for dismissal under

Rule 12(b)(6) because they go beyond the allegations in the Amended Complaint. *See Nat'l Postal Pro. Nurses*, 461 F. Supp. 2d at 28.

*b. Causation*

A plaintiff may support an inference of causation by alleging that "an adverse action shortly followed [her] protected activity." *Adams v. Fort Myer Constr. Co.*, No. 1:25-CV-1949 (TNM), 2025 WL 3511453, at *3 (D.D.C. Dec. 8, 2025) (citation omitted). Although the two events must be "very close in time," *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012), "there is no bright-line rule" governing how much time is too much, *Farrington v. Noem*, No. 23-5006, 2025 WL 1042235, at *2 (D.C. Cir. Apr. 8, 2025). Courts in this Circuit have adopted an "informal three-month rule." *Geithner*, 666 F.3d at 1349.

Here, the Amended Complaint alleges that Ms. Darden became aware of Ms. Nix's protected activity by March or April 2024 and that she failed to invite Ms. Nix to the training on July 18, 2024. Am. Compl. ¶ 51–52. Depending on when in March or April Ms. Darden learned of the protected activity, roughly three to four months may have passed before the alleged retaliatory act. As the Secretary points out, Ms. Nix "does not indicate precisely when Ms. Darden learned of the protected activity." Mot. Dismiss as 16. The Court, however, cannot conclude from the pleadings that too much time necessarily has passed between the two events to support an inference of causation. Given this Circuit's refusal to impose a strict temporal cutoff and the likelihood that discovery may shed light on the timing issues, the Court determines at this stage of the proceedings that Ms. Nix has plausibly alleged a causal connection between her protected activity and her exclusion from the July 2024 training.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Secretary's Motion to Dismiss (ECF No. 11). An order consistent with this memorandum opinion is separately and contemporaneously issued.

Dated: November 9, 2026

RUDOLPH CONTRERAS
United States District Judge